May it please the court, David Ross on behalf of Mehdi Hassani, the petitioner. Briefly, your honors, we believe that this case should be remanded back to the original immigration judge for determination as to whether or not the conversion was in fact spiritually genuine. There is a case that came down recently in the Ninth Circuit, Taufiqi v. Mukasey, 538 Fed 3rd 988, which deals with the subject directly on point, which is it isn't enough that there was a conversion to Christianity, we must look also to see if it was spiritually genuine. And since there has been no discussion whatsoever as to what the motivation was, the Board of Immigration Appeals has no reason to decide one way or the other, this case should be remanded for a hearing to decide if in fact it was spiritually genuine. I think we would all agree that yes. So your argument is focused on the petition to review the denial of the motion to reopen, is that correct? That's correct. Okay. And you're saying that the Board did not address this argument? They did not. They did not. They simply said it wasn't timely, and therefore they would not allow it. Well, it wasn't timely. That is correct. It was not timely. So you need to show changed circumstances, I gather. That is correct. Or extraordinary circumstances or something. Well, in the instant matter, Your Honor, I think the His conversion to Christianity occurred after he arrived in the United States, isn't that correct? That is correct. That is correct. But we also have seen a tremendous increase in the rhetoric and animosity towards other religions in Iran. I mean, we only have to look to President Ahmadinejad's speech recently at the United Nations where he Is he the spiritual leader of Iran? He is. He is the second in command spiritually, yes. And he has a great following as well. He has organizations that promote radical Islam in Iran. And, in fact, recently we found out that you can call on an 800 number, akin to an 800 number, basically listen to why the West is falling as it is, because it hasn't accepted the truth. Let me raise with you one issue about this case that I found somewhat troublesome. Sure. And that's on the petition to review the denial of asylum. And it mainly has to do with the way in which the hearing was conducted. The I.J. found your client not credible and gave a number of reasons. And your client offered to present, or whoever was there, I don't know if you were there at that time. I was not. Offered to present expert testimony from, I believe it was a professor from UCLA. That is correct. And the I.J. said, well, you know, I just don't find this guy credible. And there's just no way I'm going to find that he's entitled to relief, essentially. I mean, she did say some other things. But, you know, she's blankedly foreclosed any testimony from the expert witness. That is correct. And that is a major issue in this case as well, because what she really said was, I don't understand how your testimony would reflect on persecution, but yet she would not allow an expert to come and explain how anybody who has perceived homosexuality would be persecuted in Iran. And then on the other hand, she said, since I don't really understand it, it doesn't make sense, and therefore I find you not credible. In essence, by not allowing the expert, she violated two due process issues. The first was she didn't allow him to present a full case. But the second was she didn't actually allow him to explain her concerns, which is a major issue in immigration matters. What was the proffer, that is to say, what was the expert going to testify to if he had been permitted to do so? If he had been permitted to testify, he would explain that in Iran, because of the tremendous dislike and religious animosity towards anybody who is in any same-sex relationship, even perceived relationships cause persecution. It isn't enough that even if they didn't actually know that you were of homosexual persuasion, if they perceived you as such, that would be sufficient to create persecution in Iran. Is there anything the expert would have testified to that would have gone to the credibility as distinct from the persecution of homosexuals? Yes, because when you want to prove asylum, you have an objective and subjective criteria. The objective criteria is the country condition and the background. The subjective criteria is the individual themselves. In this particular instance, the judge didn't understand the objective criteria, and therefore viewed the subjective statements by the petitioner as not believable. The expert would have gone directly to explain the objective criteria, and that would have made this... What do I make of the I.J. statement? Basically, as she was saying to the expert, I'm not going to let you testify. As I read her statement in the transcript, she says, I do not find this person credible. I just don't think these things happen. I'm not even sure he's a homosexual. If I were to find him credible, I'm inclined to grant. That is to say, she said she was inclined to believe that persecution was enough, but she just didn't believe this person. So help me more understand how this expert would have rehabilitated on the credibility given that statement. I can only tell you a sense that I had. I happen to know this judge personally. I also know how this hearing took place based on my conversations. I was not there, but my sense of this transcript is the judge had a problem, A, with finding that a person who professed to be homosexual could be persecuted. It was just something ideological with that particular judge. And secondly, this particular judge wanted to see something that was clear and direct and went right to the heart of that person's perceived sexuality. But that isn't what asylum is. Asylum is what we say in De Cardoza-Fonseca, which is the 10 percent rule. If somebody could be persecuted, then that's enough. And what happened here is by not allowing the expert to testify, she really did not get the factual basis for understanding why, even if it wasn't 50 or 60 or 70 percent chance, even a 10 percent chance. And that's where the expert came in. Did she invite a proffer of what the expert would testify to? No. Did he offer a proffer? Yes. And what happened? She said that she didn't see that it was necessary and just moved on. So we really don't, if you just look at the record, we really don't know what this expert would testify to. Absolutely. And, in fact, that's another reason to remand this case back. I mean, I guess it is troubling. There is a place where she does say, what's he going to testify to, what happens to gaze in? Okay, I don't need to hear from him. She asked the question, like, tell me what your proffer is, what's he going to testify, and then she doesn't let the counsel do it. That's exactly what happened. And I'm wondering, too, if this goes to, part of the reason she found him not credible was because he admitted that, I guess it was three arrests, that the three arrests were valid. But his argument was that the three arrests may have been valid, but they were pretextual because they wanted to bring him in because he was a homosexual. Was this expert testimony going to go to that? I guess we don't know from this record, but, I mean, it very well could have included a pretextual arrest and citations. That is correct. And that is precisely our point, Your Honor, that the judge would never have known that background and that objective criteria without hearing from the expert. And if you look at the record, even were she not to allow him to testify, she should have allowed that expert to at least, or counsel to at least present a proffer. But she did not because she had such a decisive attitude towards what she wanted in this case. Let me ask one other question. Suppose, and I haven't reached any decisions about this case yet, but suppose I were to agree with you that there was a due process violation here and that it should go back for a new hearing. What does that do to the petition for review from denial of the motion to reopen? Does it move that particular issue? It could have that effect because once it gets remanded, the general rule is that everything is open again so that what would happen So when you go back down for a new hearing, you could ask the I.J. to allow you to amend the application to assert a claim based on his conversion. Right. In other words, if you remand it back, it's perceived as a general remand and everything is allowed. Okay. Thank you very much. Thank you. Good morning. May it please the Court. Tom Dupree on behalf of the United States. Let me begin by addressing the issue of the exclusion of the petitioner's As an initial matter, I think the petitioner's counsel is exactly right that the petitioner did not make a proffer. Certainly, the transcript doesn't reflect that he made a proffer. But if you read the transcript, the judge really didn't let him make a proffer. She just said, I don't need to hear that. And that was that. I mean, there was no – she didn't – she asked the question, but she didn't let him answer. Well, Judge Wardlaw, I agree with part of Your Honor's statement that she certainly expressed her own opinion. However, I think I would respectfully disagree with the idea that she somehow prevented the lawyer from making a proffer. Certainly, this is not a case where the lawyer said, wait a minute, Your Honor, let me make sure I've made a proffer. I've preserved the error. Here's what the expert would have said. Here's an expert report.  I think the petitioner's lawyer certainly had every opportunity to preserve the error. And I think it's – But if you're a judge and you say, I don't want to hear that, you know, a reasonable lawyer might want to say, okay, you know. Well, I think a reasonable lawyer would say, well, here's what my expert would have said. And nowhere in this – After the judge has told you, I don't want to hear? Well, if you want to preserve the point for appeal, I think absolutely. I think it's certainly a basic principle in trial practice. Isn't the immigration judge supposed to help develop the record? Well, if the petitioner is proceeding pro se, I think that – Doesn't that principle still apply when a petitioner is represented by counsel? Oh, I don't think so. I think that, in my opinion – They have no obligation whatsoever? Well, certainly they have an obligation. They should act like it. Well, I think – All the transcripts I read whenever a lawyer is there, sometimes you don't even – sometimes it doesn't even look like they even respect the presence of a lawyer there. Well, I think the rationale that – They act like they're in charge and they're going to develop the record and they're going to make – and they're going to lay it all out, what they want. And that's the way they operate. And I don't – and I find it hard to believe that they don't have – that that's not their basic position. Well, I think – Case law reflects that they're responsible for developing the record. Well, certainly that rule, I think, applies with particular force when the petitioner is proceeding pro se. But I don't see any justification for a rule that when a petitioner is represented by a lawyer, that the judge has the opportunity to assist that lawyer to preserve a record for appeal. I think that would broaden this Court's case line, take it several steps beyond what it's already recognized. I agree – I take Your Honor's point that even in cases where a petitioner is represented by a lawyer, in many instances, sure, an IJ might assist in ensuring the development of the record. But I think that there's a difference in kind between an IJ, just as some district court judges run their chambers in a particular manner. IJs do not go by the rules of civil procedure. I mean, it might be nice if they did, but they don't. And so when this IJ – I mean, you've read this section, right? Yes. She just said, I don't want to hear it. She asked the question and said, I don't want to hear it because I've already found it incredible. Well, we do have a statute in a case that holds that the IJ must allow the petitioner to present corroborating testimony of witnesses under 8 U.S.C. Section 1252b. What do you make of that? Well, I think that rule is not implicated in any way, shape, or form here because the testimony – let's assume for the sake of argument that he had made the proffer that counsel just articulated. I think it's clear that what this expert would have said is simply testifying to general country conditions. Well, well, well. We don't know what the expert would have said. We've already established that in the first four minutes of your argument. But let's – and I'm saying let's accept counsel's representation as to the substance of the testimony. In other words, this court under its precedent needs to do some sort of prejudice analysis. Your argument is that the professor from UCLA could not have said anything that would have affected the adverse credibility determination. That's right, because there's no suggestion, and I don't think even Petitioner's counsel is representing today, that that professor had personal knowledge of what the petitioner was doing or had happen to him in Iran. But most petitioners don't have personal knowledge. That's right. That's right. But this is a credibility finding. But the expert, and we just heard this, might be able to say, well, here is the pattern of discrimination against homosexuals in Iran. He might have been able to say, I mean, I don't know, he might have been able to say that they picked them up on pretext hoping to get them to confess. But if the expert had said that that is a typical tactic that the Iranian government does, that does not detract from the many bases on which the IJ found them. I'm not sure that's true at all, because the core of his testimony is, I was out with a girl at the movies. They picked me up not really because they were interested in my being out with a girl. That was against the law, and that's ostensibly why they did it. But the real reason is they thought I was a homosexual, and they wanted me to confess. I mean, that's absolutely central to his story. But that wasn't the basis for the adverse credibility judgment, Judge Fletcher. The basis for the adverse credibility judgment, first and foremost, was the demeanor, the demeanor finding. But she was part of it. I absolutely grant you that. And certainly under this Court's precedent, this Court can sustain the adverse credibility determination based solely on the demeanor finding. And in our view, that's where this case should be. But she might have had a different impression of his, you know, she said he broke down and cried at various times throughout the trial. That's what she said. And she put a certain characterization on that. Sure. Entirely different. She might have had a different take on that if she had heard the full picture. With respect, Judge Pius, I don't think so. Because the gist of the IJ's credibility finding based on the Petitioner's crime was that she thought he was faking and that he started crying when he was caught in an inconsistency or in a lie. And she didn't believe that it was genuine. But that in itself is speculative. He could have been crying because he's bringing up these very bad, horrible memories of being beaten after being arrested for protection reasons. I mean, isn't that just as reasonable? And if I grant that, that it's just as reasonable, then this Court should sustain the determination. The IJ is empowered to decide between reasonable. The IJ is not allowed to speculate or conjecture on those sorts of things. But I don't think it's speculation or conjecture if she says, I watched this man testify for many hours in my courtroom, and I think he was faking. I don't think. Are you aware of the legions of cases in the BIA and the IJ by both of them? And now we have Ninth Circuit law that say that if the – that where there's going to be an average credibility determination, the corroborating evidence is not just allowed, but it's required. It's actually required. It's the burden that's on petitioner to put something in to corroborate him when the IJ decides that tentatively he's not credible. The burden now goes on the petitioner to put in corroborating evidence. We have many cases that require the petitioner to put in that evidence, and here he wasn't allowed. But, again, the fault of the vice in his – the problem in his testimony was that he testified inconsistently, he had the demeanor problem, he was missing key elements in his story. For example, he claimed that he had a relationship with a man for at least significant period of time while in Iran, and when asked, well, was your partner ever arrested in Iran, he said, well, I don't know. Let me ask you something else. What would be the harm in remanding and giving this petitioner his due process, a due process hearing, a hearing consistent with due process? I mean, the IJ, once he has the hearing that he's entitled to, the IJ might still find him not credible. Well, but with respect, the same argument could be made in any case where someone petitions for review to say, well, what's the harm? Let's send it back and do it over. I mean, if we believe that he was not given his due process rights, what problem does that – does the government have with that? Well, I suppose if this Court finds a due process violation, I submit it's hard at this point for us to argue that it shouldn't be sent back. Our argument certainly is that this doesn't even remotely approach, I don't think, a due process violation. There was no prejudice whatsoever arising from the exclusion. That's what you say. That's right. And that's our position. Absolutely, Your Honor. Let me ask one other question. I mean, do you agree with opposing counsel in response to Judge Pius' question? Does the – if we were to reverse on the petition, does the motion to reopen become new? It seems to me the answer is yes. In other words, unless this Court – depending on the language this Court used, of course, in a remand order, which I'm hoping will not issue, but if it were, I think it would depend on how this Court framed it. But I think absent any direction from this Court, I certainly think the petitioner would be entitled on remand to say, I have a new theory of relief. I, you know, request that the court or the board or the IJ entertain this. Do you agree that the installation – I'm not going to try to pronounce his name. I'm not a politician, so I don't have to – that the installation of a new president is a change country condition? For purposes of this case, I don't know, because the relevance of that change depends on what new evidence the petitioner puts in on remand. So it could be. It could be, but it also might not be. But I think at the end of the day, the whole expert issue really does hinge on the adverse credibility determination. And there were about eight or nine separate bases identified by the IJ and the board for that decision. And all the government – But those adverse credibility findings seem to be linked and interdependent. So if the IJ believed – and this is an if – that in fact it is a pattern in Iran, because the expert testifies to this effect, of picking up suspected homosexuals on pretexts and then seeking to get them to confess, I'm not sure the other things the IJ found as bases for incredibility she would have found. But – well, I respectfully disagree, Your Honor, because I think demeanor has no impact on the expert testimony. No, but you see that – The gaps in his story – No, no. I have to interject on this one. She says he cries when he's caught in inconsistencies, and you said when he's caught in lies. Now, that last one is circular. I mean, he can't be – she can't use it as a basis for finding he's lying, that he cries when he's lying. But inconsistencies is right. And inconsistencies – you can't quite tell from the transcript when he's crying and when he's not. At one point she says, please compose yourself, but for the most part you don't know when those times are. But it may well be when she's indicating some suspicion that, you know, why would they pick somebody up for being out with a girl? Why would they pick somebody up with alcohol? I mean, at that point, I mean, maybe that's when he's starting to cry. Those are the key points, which is possible. We don't know. The expert might say, well, this is a normal pattern. Well, I don't think, again, with respect, that that's really a fair reading of the IJ's credibility determination. I grant you there might have been one or two adverse credibility foundations that would be affected by something the expert says. But I think that the vast bulk of them are utterly independent from anything that the expert could possibly have testified to. So even if this Court were somehow to get over the failure of the lawyer to say, here's my offer of proof and to preserve the issue, which he never did, and even if this Court were to find prejudice, I don't think it undercuts the validity of the adverse credibility determination, which could be sustained solely on the basis of the demeanor finding. May I ask you a question? You're from the Department of Justice. Yes, Your Honor. Are immigration cases what you ordinarily do? I sure do a lot of them, Your Honor. You do a lot of them. Which department and division are you in? I'm in the Civil Division. You're in the Civil Division? Yes. Yeah. But you did a good job today. Yes. Well, I appreciate that. It's always a pleasure to appear before the Court. Thank you very much. Thank you. Okay. Hassani v. McKay C will be submitted in this session of the Court. It's an adjournment. All right.
judges: Wardlaw, Fletcher, Paez